IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DENISE RENEA MARTIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI, ) <br> ACTING COMMISSIONER OF ) <br> SOCIAL SECURITY ) <br> ADMINISTRATION, ) <br> ) <br> Defendant. ) | Case No. CIV-20-872-SM |

## MEMORANDUM OPINION AND ORDER

Denise Martin (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned for proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). *See* Docs. 17, 18.[1]

Plaintiff asks this Court to reverse the Commissioner's decision and to remand the case for further proceedings, arguing the Administrative Law Judge (ALJ) erred in his (1) consistency analysis; (2) consideration of both

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the administrative record (AR) will refer to its original pagination.

Plaintiff's need for an assistive device and the residual functional capacity[2] (RFC) assessment's omission of limitations related to an assistive device; (3) assessment of her functional limitations resulting from her laryngitis; and (4) consideration of Plaintiff's incontinence. Doc. 21, at 2. After a careful review of the AR, the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

---

[2]    Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. Administrative Law Judge's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 10-28; *see* 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since her alleged onset date of February 21, 2018;

(2) had the following severe medically determinable impairments: obesity, multiple injuries sustained in car accident, status post deep vein thrombosis of the lower left extremity, chronic pain syndrome, and post traumatic stress disorder and major depression;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4)   had the RFC to perform sedentary work, with certain restrictions;

(5)   was not able to perform her past relevant work;

(6)   was able to perform jobs that exist in the national economy, such as stuffer, addresser, and final assembler/optical goods; and so,

(7)   had not been under a disability from February 21, 2018 through December 27, 2019.

*See* AR 12-28.

### 2.   Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II.   Judicial review of the Commissioner's final decision.

### A.   Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

### B.   Issues for judicial review.

#### 1.   The ALJ's consistency analysis.

The bulk of each of Plaintiff's arguments emanate from her disagreement with the ALJ's consistency analysis. The ALJ made the following findings relating to Plaintiff's consistency:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; *however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.*

AR 20 (emphasis added).

> [When informed that to continue pain medication management, she would have to sign a narcotics contract], the claimant declined and opted to take over-the-counter medications, which is supported by the record. (Exhibit 9F, page 27). I find the claimant reported such severe pain and extremely limited abilities during testimony. However, the record has clearly shown that when given the opportunity to continue Percocet, she declined when she was informed she would have to sign a contract and has simply taken

5

> Aleve, ibuprofen and Tylenol (as noted within the record), which is *certainly inconsistent with the level of pain she alleged during testimony*.

*Id.* at 24-25 (emphasis added).

> I find that during testimony, the claimant reported significantly limited abilities, however, *the evidence does not support them to the degree alleged.*

*Id.* at 25 (emphasis added).

> I have considered the claimant's testimony and find it to be partially supported, based on the evidence of record, but the *claimant's description of the severity of the pain has been so extreme as to appear implausible*, as the records have indicated improvement and healing of fractures she sustained in the motor vehicle accident. Additionally, I find the *claimant reported extremely limited physical abilities during testimony, but they are simply not supported to the degree alleged.*

*Id.* (emphasis added).

In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at \*6-7 (Oct. 25, 2017). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her

capacities to perform work-related activities." *Id.* The factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include: the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p, 2017 WL 5180304 at *7-8 (Oct. 25, 2017) (listing similar factors); 20 C.F.R. § 404.1529(c)(3).

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *See Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (describing deference due the finder of fact's credibility determinations, in general) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence relied upon to evaluate the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (quotations omitted). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.* As long as the ALJ links his assessment of the consistency of Plaintiff's testimony to specific

evidence in the record, his determination is entitled to substantial deference. *See White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2001) (The ALJ's "determination did not rest on mere boilerplate language, but instead was linked to specific findings of fact, findings [the reviewing court is] compelled to accept because they are fairly derived from the record.").

Plaintiff alleges that the ALJ's consistency finding is not supported by substantial evidence because the ALJ (1) did not consider Plaintiff's traumatic brain injury's (resulting from a severe motor vehicle accident that occurred while she was actively using methamphetamine) impact upon her memory (and her resulting misstatements of her weight gain and illicit drug use); Doc. 21, at 8-9; (2) relied in part and erroneously on Plaintiff's not signing a narcotics contract, *id.* at 11; (3) incorrectly stated "no records [] substantiate the continued need for an assistive device [(specifically, a cane)] and she has not been given any physical or mental limitations by any physician or provider," *id.* at 12 (citing AR 26); and (4) improperly applied his "own medical judgment in determining [a] cane was not medically necessary," *id.* at 15-16.

First, as to the inconsistencies in weight gain and illicit drug use, as the Commissioner points out, nothing in the ALJ's decision suggests he relied negatively on these responses from Plaintiff. *See* Doc. 25, at 11. As to the narcotics contract, Plaintiff argues "her desire not to be addicted to habit-

8

forming drugs is more likely the accurate takeaway, not that she did not want to sign a narcotics contract." Doc. 21, at 12. The Commissioner counters that Plaintiff's decision not to sign a contract "tends to show that her pain was not as severe as alleged." Doc. 25, at 12. While Plaintiff's desire to cease her use of an addictive opiate (here, Percocet) is understandable, the ALJ pointed to specific evidence in the record to support his statement. AR 24-25. And so the Court does not find the ALJ's assessment of Plaintiff's abstention to undermine the entirety of his consistency determination.

The Court finds the ALJ adequately evaluated Plaintiff's pain. He discussed at length the objective medical evidence. AR 19-26. The ALJ did not doubt that Plaintiff experienced some pain from the injuries she sustained in the February 2018 motor vehicle accident but noted the period of "rehabilitation and healing," relying on objective medical evidence. *Id.* at 24. Despite Plaintiff's comment that the ALJ's "reasoning is flawed" and that she did not "lack credibility," Doc. 21, at 8, 11, there is no indication that the ALJ fully rejected Plaintiff's testimony. Rather, the ALJ merely stated that Plaintiff's testimony was not fully consistent with the "extreme" disabling pain she alleged.

While not dispositive, Plaintiff's self-reports do tend to suggest that Plaintiff is capable of a higher level of activity than a person who is disabled

9

under the Act. *See Keyes-Zachary*, 695 F.3d at 1164 (noting an ALJ is "not required to assign a weight to [a provider's] statements relayed to him by [the claimant]"); *Robnett v. Berryhill*, 2017 WL 564681, at *8 (W.D. Okla. Feb. 13, 2017) ("To the extent these records present Plaintiff's self-reports, the ALJ's assignment of weight was unnecessary."). The ALJ compensated for the level of pain supported by the record by limiting Plaintiff's RFC to sedentary work with additional restrictions, such as no climbing of ladders, ropes, or scaffolds. AR 16.

In short, Plaintiff argues that the ALJ erred by mischaracterizing or ignoring evidence favoring Plaintiff. Doc. 21, at 9-16. However, the Court must "decline [Plaintiff's] invitation to reweigh the evidence to substitute our judgment for that of the Commissioner" when the ALJ has utilized the correct legal standards in his finding. *Harper v. Colvin*, 528 F. App'x 887, 892 (10th Cir. 2013) (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). The ALJ is not required to discuss every piece of evidence he considers. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). He is only required to "explain and support with substantial evidence" which parts of a claimant's testimony he did not fully believe and why. *See McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002). Here, based on the Court's review of the ALJ's determinations, the Court finds the ALJ did precisely what was required by

identifying a number of inconsistencies in the record. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010). Although Plaintiff appears to want the ALJ to perform "a formalistic factor-by-factor recitation of the evidence," this is not what is required. *See Wahpekeche v. Colvin*, 640 F. App'x 781, 783 (10th Cir. 2016) (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

### 2. Substantial evidence supports the ALJ's conclusions that Plaintiff did not need a medically required assistive device.

Plaintiff takes issue with the ALJ's failure to include her alleged need for a cane in the RFC assessment. Doc. 21, at 17. She argues she has poor balance, a bad leg, traumatic brain injury, and neurological issues, and while using her cane, she cannot "carry with both hands." *Id.*

As the Commissioner acknowledges, the ALJ discussed Plaintiff's claim that she "use[d] a cane every day." Doc. 25, at 12. But the ALJ found the cane was not medically required, and Plaintiff points to no medical documentation establishing such a need. *Id.*; AR 26. Indeed, Plaintiff obtained the cane "on her own." AR 17.

Dr. Jeffrey G. Hoffsommer noted Plaintiff's full range of motion in February 2019, and noted she used a cane. *Id.* at 24. In March 2019, Dr. Hoffsommer completed a five-year disabled parking placard for Plaintiff. *Id.* In May 2019, Dr. Hoffsommer again noted Plaintiff's full range of motion, with no swelling or deformity. *Id.* The ALJ discredited the five-year disabled parking

11

placard, citing Dr. Hoffsommer's own treatment records. AR 26. The ALJ concluded "there are no records to substantiate the continued need for an assistive device and she has not been given any physical or mental limitations by any physician or provider." *Id.* Substantial evidence supports the ALJ's RFC assessment, and the ALJ committed no legal error in his application of SSR 96-9p.

### 3. Substantial evidence supports the ALJ's consideration of Plaintiff's chronic laryngitis.

Plaintiff argues the ALJ should have included laryngitis-related restrictions in the RFC assessment. She maintains the ALJ nearly suspended the hearing due to her speaking troubles. Doc. 21, at 19. She argues she is unable to engage in occasional contact with supervisors, coworkers, and the public, as the RFC assessment requires. *Id.* at 20.

The ALJ noted Plaintiff's diagnosis of "chronic laryngitis, secondary to paraoesophageal reflux disease and smoking." AR 12-13. Plaintiff told the ALJ her condition was not painful and continued through testimony without issue. *Id.* at 48-49. The ALJ reviewed Dr. Dilling's medical examination. *Id.* at 19. After examination and scoping, Dr. Dilling advised Plaintiff to stop smoking, in addition to other measures. *Id.* She received a prescription for prednisone, but the record indicated Plaintiff "continued to smoke." *Id.* at 13, 19.

Next, none of the jobs the ALJ found at step five require significant "taking instructions/helping," and none required "talking." *See* DICOT 731.685-014; 209.587-010; and 713.687-018. Plaintiff points to no objective medical evidence suggesting she needed further limitations than those the ALJ imposed, which restricted her to sedentary work. The ALJ was not required to include Plaintiff's laryngitis in his questioning to the vocational expert. *See Qualls*, 206 F.3d at 1373 (finding ALJ's hypothetical questions to vocational expert sufficient because the questions "included all the limitations the ALJ ultimately included in his RFC assessment").

### 4. Substantial evidence supports the ALJ's consideration of Plaintiff's incontinence.

Similarly, Plaintiff argues the ALJ's RFC assessment did not adequately address her incontinence. Doc. 21, at 21-22. The ALJ found Plaintiff testified as to her reported urge incontinence since the automobile accident. AR 13. She testified to using 6-8 incontinence pads each day. *Id.* Reviewing the medical evidence, the ALJ noted that when discharged on April 6, 2018, Plaintiff's records indicated she "was continent of bowel and bladder." AR 13. He noted her reported urge incontinence began August 1, 2018, and she has received both Imipramine and Ditropan XL to treat it. *Id.* The ALJ observed that the objective medical evidence does not support Plaintiff's reported use of 6-8 pads per day. *Id.*

13

As before, the ALJ need not include in his questioning of the vocational expert a condition he ultimately discounted. *See Qualls*, 206 F.3d at 1373. Plaintiff points to no objective medical evidence supporting further limitations, but only to her subjective complaints and reports.

It seems clear to the Court, therefore, that Plaintiff's dispute is not actually that the ALJ did not evaluate both Plaintiff's severe and non-severe impairments at step four, but rather that the ALJ did not evaluate the impairments in Plaintiff's favor. The Court finds that substantial evidence supports the ALJ's RFC determination, as it is supported by the ALJ's thorough analysis, by Plaintiff's adverse consistency finding, by the objective medical evidence of record, and by the medical opinions of every doctor who opined on Plaintiff's exertional limitations.

### III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 23rd day of July, 2021.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE